Veronica McDAY, on behalf of Sharonica McDAY, an infant, Plaintiff,

v.

CITY OF ATLANTA, Chief of Police Morris Redding, in his official capacity; Officer Carl Price and Officer S.C. Cartwright, Defendants.

No. 1:89–CV–237–RHH.

United States District Court, N.D. Georgia, Atlanta Division.

April 4, 1990.

not so outrageous as to warrant a dismissal with prejudice.

Katrina L. Breeding, Atlanta, Ga., for plaintiff.

Marva Jones Brooks, Atlanta City Atty., Jeff S. Klein, Atlanta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

This action is currently before the court on defendants' motions for summary judgment. For the reasons stated below, the court GRANTS defendants' motions for summary judgment.

FACTS

The tragic circumstances that account for the filing of the above-styled action were triggered by the arrest of Robert Wadley. Armed with an arrest warrant, City of Atlanta police officers apprehended Wadley at his home on December 31, 1986. Wadley was charged with the murder of Richard Saxon.

Defendant police officers Carl Price and S.C. Cartwright transported Wadley to the Homicide Task Force Office at Somerset Terrace. Wadley was handcuffed immediately after his arrest and remained so during transportation to police headquarters.

Upon arrival at Somerset Terrace, Officer Price placed the alleged murder weapon and several bullets on his office desk. Officer Price's office opens into the lobby/reception area of the Homicide Task Force Office.

Officers Cartwright and Price removed the handcuffs from Wadley and questioned him concerning the murder of Saxon. At some point, Wadley admitted he had shot Saxon. This statement was then transcribed and signed by Wadley. After Wadley had signed his statement, Officer Cartwright resumed work at the desk in the lobby area; Officer Price left the lobby to locate a pair of rubber gloves.

Wadley, who was left sitting unattended and unrestrained in the lobby, arose unobserved and entered Price's office. Wadley loaded the weapon which Price had placed on the desk; Wadley then shot himself in the right side of his head. Wadley died from the self-inflicted wound.

Wadley's child, Sharonica McDay, who was born shortly after Wadley's death, brings this action through her mother Veronica McDay. Plaintiff claims that defendants violated Wadley's federal constitutional rights. In addition, plaintiff brings several state law claims. Defendants now move for summary judgment on plaintiff's section 1983 claim.

DISCUSSION

I. *Standard of Review*

This court will grant summary judgment when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must demonstrate that the nonmoving party lacks evidence to support an essential element of her or his claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant's burden is "discharged by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Once the movant has met this burden, the opposing party must present evidence establishing a material issue of fact. *Id.* The nonmoving party must go "beyond the pleadings" and present evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

While all evidence and factual inferences should be viewed in a light most favorable to the nonmoving party, *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir.1987), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in the original). An issue is not genuine if unsupported by evidence or created by evidence that is "merely colorable" or "not significantly probative." *Id.* at 250, 106 S.Ct. at 2511. Similarly, an act is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. *Id.* at 248, 106 S.Ct. at 2510. Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of every element essential to his or her case so as to create a *genuine* issue for trial. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552; *Rollins*, 833 F.2d at 1528.

II. *Application*

A. Municipal Liability

Defendants City of Atlanta and Chief Morris Redding move for summary judgment, claiming that plaintiff has failed to demonstrate the existence of a custom or policy which deprived Wadley of his constitutional rights.

A local government is liable under section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury...." *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Section 1983 liability may not be predicated upon a respondeat superior theory. *Id.* at 694–95, 98 S.Ct. at 2037–38. Only deprivations stemming from government "custom" or "policy" may lead to the imposition of governmental liability. *Mandel v. Doe*, 888 F.2d 783, 791 (11th Cir.1989). As the Supreme Court stated in *Pembauer v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986):

> [R]ecovery from a municipality is limited to acts that are, properly speaking, acts "of the municipality"—that is, acts which the municipality has officially sanctioned or ordered.

In the case at hand, plaintiff alleges that:

Defendants City of Atlanta and Chief Morris Redding were indifferent to and failed to train and supervise defendants Cartwright and Price in the necessary skills regarding proper procedure and treatment towards those incarcerated.

Complaint, ¶ 15. Plaintiff also states that defendants should be held liable for "gross negligence in failing to provide suitable and secure protection for a person in its [sic] custody." Plaintiff's Response to Defendants' Motion for Summary Judgment, p. 2.

■ Thus, the first ground on which plaintiff seeks to hold the City of Atlanta and Chief Redding liable is failure to train or supervise its police officers. To establish municipal liability on the basis of a city's failure to train, a plaintiff must demonstrate (1) that the city in fact inadequately trained its employees in the execution of their duties and (2) that this failure to train was actually a city policy. *Kerr v. City of West Palm Beach*, 875 F.2d 1546 (11th Cir.1989). With regard to the second element, the Supreme Court has made clear that "only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989).[1]

■ Plaintiff's failure to train claim is stated cursorily in the complaint at paragraph 15. Plaintiff fails completely to put forward any evidence which would support a failure to train claim. Beyond bare allegations that defendants failed to train officers concerning "treatment towards those incarcerated", plaintiff has not identified any facts indicating (1) a lack of appropriate training or (2) that the lack of training constituted a city policy. Without more than cursory allegations outlined in the initial complaint, plaintiff cannot survive summary judgment. Plaintiff has a responsibility to counter defendants' motion for summary judgment by producing evidence which demonstrates the existence of a factual issue for trial on the failure to train claim. Plaintiff has failed to do so.

■ Plaintiff's second ground for imposing municipal liability is couched as a "gross negligence" claim.[2] Plaintiff's Response, p. 2. Essentially, plaintiff maintains that the City of Atlanta should be held liable for failing to provide "suitable and secure protection for a person in its custody." *Id.* To survive defendants' motion for summary judgment, plaintiff is required to go beyond the pleadings to produce some evidence that the failure to provide adequate care and protection of pretrial detainees constituted a city policy. Again, plaintiff has simply failed to go beyond the pleadings to reveal any facts that the city officially sanctioned or ordered the alleged inadequate care and protection of pretrial detainees. Thus, plaintiff cannot survive summary judgment.

■ Plaintiff has alleged no facts that link Chief Morris Redding to the alleged unconstitutional failure to train claim or to the failure to provide adequate protection claim. *Pembauer* does provide that, under certain circumstances, municipal liability may be imposed for a single decision by a municipal policymaker. *Pembauer v. City of Cincinnati*, 475 U.S. 469, 484–85, 106 S.Ct. 1292, 1300–01, 89 L.Ed.2d 452 (1986).[3]

---

1. The *Harris* Court also noted, "[i]t may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Harris*, 109 S.Ct. at 1205. Thus, in such a case, the failure to provide proper training fairly could be said to represent a policy for which the city is responsible and may be held liable.

2. Gross negligence was, of course, rejected as a grounds for imposing municipal liability for failure to train in *Harris*, 109 S.Ct. at 1204–04.

3. In *Monell*, the Supreme Court had concluded that municipalities could be held liable only when an injury was inflicted by a government's "lawmakers or those whose edicts or acts may fairly be said to represent official policy." 436 U.S. at 694, 98 S.Ct. at 2037. Thus, the "final

However, plaintiff has failed to demonstrate that Redding acted as a final policymaker or that any policies Redding instigated deprived Wadley of his constitutional rights.

Plaintiff quite simply has failed to demonstrate that municipal liability should be imposed on the City of Atlanta or Chief Redding. These defendants are accordingly entitled to summary judgment.

### B. Qualified Immunity

■ Officers Cartwright and Price move for summary judgment on qualified immunity grounds. When an official violates an individual's constitutional rights, an action for monetary damages may provide an effective remedy for the plaintiff as well as a deterrent to the defendants. However, permitting damage suits against officials also entails the risk that "fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *see also Harlow v. Fitzgerald,* 457 U.S. 800, 814, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)[4]. The qualified immunity defense first recognized by the Supreme Court in *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), attempts to reconcile the need for an adequate remedy for constitutional abuses with the desire not to inhibit officials' independent exercise of discretionary functions.[5]

In *Harlow,* the Court held that "government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." In *Anderson,* 483 U.S. at 635, 107 S.Ct. at 3034, the Court further refined the *Harlow* standard by clarifying the meaning of "clearly established:"

> [T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right.

Thus, at the outset, the relevant inquiry in *Anderson* seems to be whether a reasonable officer could have believed his or her conduct was lawful in light of clearly established law *and* the information the officer possessed. Later in the *Anderson* decision, however, the Court states its hesitation "to complicate qualified immunity analysis by making the scope or extent of immunity turn on the precise nature of various official duties or the precise character of the particular rights alleged to have been violated." *Id.* A synthesis of these two seemingly contradictory formulations in *Anderson* is perhaps found in a rule requiring the trial court to conduct at least minimal inquiry into the particular circumstances under which the official was operating in a given case. Such a rule comports with the *Anderson* Court's desire to avoid abstract or generalized assertions of constitutional violations.[6] *Harlow* and *Anderson* thus form the backdrop for this court's inquiry into the reasonableness of Officer Cartwright and Officer Price's conduct.

■ Plaintiff asserts that Officers Cartwright and Price violated Wadley's Eighth and Fourteenth Amendment Rights.

---

policymaker" theory of municipal liability actually had its genesis prior to *Pembauer.*

**4.** *Harlow* was not a section 1983 suit but an action against federal officials brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The analysis of the qualified immunity defense, however, is identical in section 1983 and *Bivens* cases. *See Davis v. Scherer,* 468 U.S. 183, 194 n. 12, 104 S.Ct. 3012, 3019 n. 12, 82 L.Ed.2d 139 (1984).

**5.** Qualified immunity is an affirmative defense available to officials sued in their individual capacity. Official capacity actions "generally represent another way of pleading an action against an entity of which an officer is an agent." *Monell,* 436 U.S. at 690, n. 55, 98 S.Ct. at 2035, n. 55.

**6.** The Court arguably concedes in *Anderson* that some discovery will almost always be necessary in qualified immunity cases.

Complaint, ¶ 17. Specifically, plaintiff argues that defendants were deliberately indifferent in failing to prevent Wadley's suicide.

To the extent plaintiff's claim is predicated on the Eighth Amendment, it is improper:

Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.... [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the state seeks to impose punishment without such adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.

*Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). However, the Due Process Clause does protect pretrial detainees at least to the extent that the Eighth Amendment protects convicted prisoners. *See City of Revere v. Massachusetts General Hospital,* 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983). Thus, the Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee. *Martin v. Gentile,* 849 F.2d 863, 871 (4th Cir.1988) (citing *City of Revere,* 463 U.S. at 244, 103 S.Ct. at 2983).

■ The right of a pretrial detainee not to be treated with deliberate indifference usually contemplates that the officials have some knowledge of the detainee's needs. Courts have described "deliberate indifference" variously; however, the term at least encompasses "acts or omissions so dangerous in respect to health or safety that the defendants' knowledge of a large risk can be inferred." *Cortes–Quinones v. Jiminez–Nettleship,* 842 F.2d 556, 558 (1st Cir.), *cert. denied,* 488 U.S. 823, 109 S.Ct. 68, 102 L.Ed.2d 45 (1988). In the context of a pretrial detainees' suicide, courts have typically required that defendants have knowl-

edge that the detainee was a suicide risk before they can be charged with deliberate indifference. *See Belcher v. Oliver,* 898 F.2d 32 (4th Cir.1990).

In *Edwards v. Gilbert,* 867 F.2d 1271, 1275 (11th Cir.1989), the Eleventh Circuit stated:

In the absence of a previous threat of or an earlier attempt at suicide, we know of no federal court in the nation or any other court within this circuit that has concluded that official conduct in failing to prevent a suicide constitutes deliberate indifference.

Plaintiff in the case at hand has not alleged that Wadley had attempted suicide previously or that he was threatening suicide on the night of his arrest. Without such evidence, this court would be stretching beyond all precedent to find that defendants were deliberately indifferent in their treatment of Wadley.

■ The court does note that the facts of this case differ from those in the majority of pretrial detainee suicide cases. In most instances, the detainee committed suicide after being placed in a holding cell or jail. In the case at hand, Wadley was sitting unrestrained and unattended in the lobby area of the Somerset Terrace Homicide Office. Defendants Cartwright and Price left Wadley alone and unrestricted after he had signed a written statement implicating him in a homicide. To further exacerbate the situation, the officers left the alleged murder weapon and several bullets readily accessible to Wadley as he sat in the lobby area. The court notes the evident carelessness of Wright and Cartwright. If section 1983 liability could be predicated on negligence, plaintiff would surely have a claim against these officers. The court is restrained by the fact that section 1983 provides plaintiff with a remedy for the deprivation of constitutional rights. Here, the only properly asserted constitutional right is the pretrial detainee's right not to be treated with deliberate indifference. As stated above, Cartwright and Price cannot be said to have acted with deliberate indifference to Wadley within the meaning of section 1983 jurisprudence

when they left him unattended with ready access to the gun. It goes without saying that a pretrial detainee should not have ready access to a weapon, both because of the threat to the detainee and the threat to police officers or third parties. However, no violation of the Fourteenth Amendment is established absent evidence of deliberate indifference to the detainee's cognizable suicidal tendencies.

The existing law at the time of Wadley's arrest provided quite clearly that an officer is not deliberately indifferent to a pretrial detainee who commits suicide unless the officer has knowledge of a previous threat or an earlier attempt at suicide by the detainee. Officers Cartwright and Price are entitled to qualified immunity.

III. *State Law Claims*

In addition to the section 1983 claim, plaintiff also filed numerous state law claims against defendants. Because the court grants defendants summary judgment on the section 1983 action, the court no longer has jurisdiction over the state law claims. Accordingly, the court DISMISSES plaintiff's state law causes of action.

CONCLUSION

The court GRANTS all defendants summary judgment on plaintiff's section 1983 claims. The court DISMISSES plaintiff's state law claims for lack of jurisdiction. This order terminates the above-styled action in this forum.

So ORDERED.