**Kevin Carl BARKER, Plaintiff,**

v.

**BRANTLEY COUNTY, GEORGIA; Cordell Wainright, individually and in his official capacity as sheriff of Brantley County; and Bryan DePratter, Phil Purdom and Howard Crews, individually and in their official capacity as jailors for the Brantley County Sheriff's Department, Defendants.**

**Civ. A. No. CV292–256.**

United States District Court,
S.D. Georgia,
Brunswick Division.

July 29, 1993.

---

Eugene Highsmith, Brunswick, GA, for plaintiff.

James T. McDonald, Jr., Sidney P. Wright, Swift, Currie, McGhee & Hiers, Atlanta, GA, for defendants.

### ORDER

ALAIMO, District Judge.

On October 20, 1992, Plaintiff, Kevin Carl Barker ("Barker"), instituted this federal question action against Defendants, alleging violations of the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("§ 1983"). Barker contends that: (1) while he was held in the Brantley County jail he developed pneumonia, and Defendants failed to address adequately his illness; and, (2) while pleading guilty to the charges against him, Barker was too ill to waive knowingly his rights under the Sixth Amendment. As such, he alleges that he was deprived of his rights secured by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. This case is presently before the Court on a motion for summary judgment by Defendants, pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons discussed below, summary judgment will be **GRANTED** in favor of Defendants.

### FACTS

At 7:40 P.M. on April 25, 1992, Barker was stopped by the Georgia State Patrol on Georgia Highway 32 in Brantley County, Georgia. Barker was given citations for speeding and for having no driver's license or proof of insurance. Barker was then taken by the Georgia State Patrol to the sheriff's office for Brantley County, Georgia. At the sheriff's office, Barker informed the officers that his name was Derrick Lee Barker, which was actually his brother's name.

At the sheriff's office, Barker contacted a bonding company to secure bond for his release from the Brantley County jail. Barker, similarly, misrepresented himself to the bondsman by using his brother's name. Under his brother's name, Barker obtained the bond and was subsequently released. Several days later, however, the bonding company discovered that Barker had used a false name. As a result, on April 29, 1992, the bonding company located Barker, returned him to the Brantley County jail and "came off" the bond. Thereafter, Barker was unable to make bond, and he was retained in the custody of the Brantley County sheriff's department.

Shortly after being confined in the jail, Barker informed the jailer that he felt ill. On May 1, 1992, Defendant, Howard Crews ("Crews"), took Barker to the Brantley Family Care Center where Barker was examined by Dr. Russell Luebbert, D.O. ("Luebbert").[1]

---

**1.** The Brantley Family Care Center, an affiliate of Southeast Georgia Regional Medical Center, provides the only doctor for medical needs in Nahunta, Brantley County, Georgia. (Wainright Aff. at ¶ 5). When medical needs for a prisoner in the Brantley County jail arise, the prisoner is taken to the Brantley Family Care Center during its hours of operation: Monday, Tuesday and Thursday, 9:00 A.M. to 5:00 P.M.; Wednesday, 9:00 A.M. to 1:00 P.M.; and, Friday, 9:00 A.M. to

Luebbert diagnosed Barker's ailment as an upper respiratory infection and possible early pneumonia. He prescribed an antibiotic, Erythromycin, 400mg, four times a day, along with cough medicine, Tussi–Organidin, two teaspoons four times a day. Luebbert instructed Barker's return in ten days, or sooner if problems developed.

According to Barker's Inmate Medication Record ("the Record"), *see* Def.s' Mot. for Summ.J. at Ex. B, the prescribed medications were administered to him over the next ten days. On at least five occasions, however, the Record shows that Barker "didn't take," "would not take" or "would not get up to take" his medication. *Id.* In addition, on at least six occasions, the Record does not indicate that Barker received the full four doses. *Id.* On several days, the Record indicates that the medication was only given two or three times. *Id.* Finally, the Record shows that on May 3, the cough medicine ran out and was not administered through May 10. *Id.*

At 9:17 P.M. on May 10, 1992, Defendants called, at Barker's request, the Brantley County Emergency Medical Service to the jail to examine Barker. The Emergency Medical Technicians ("EMTs") noted that Barker had a low grade fever. The next day, on May 11, 1992, Defendants took Barker to the Brantley Family Care Center where he was again examined by Luebbert. Chest x-rays were taken by Luebbert, and a diagnosis of pneumonia was made. Luebbert noted that the x-ray showed an infiltrate and possible mass in the right lung. In addition, he found that Barker's temperature was slightly higher than it was on the previous examination. In response, Luebbert prescribed a different antibiotic, and instructed a follow-up visit in ten days, or sooner if Barker's condition worsened.

At approximately 5:00 A.M. on May 12, 1992, Defendants again, at Barker's request, called the Brantley Emergency Medical Service. The EMTs were informed that Barker claimed to be having trouble breathing.

(Evor's Aff. at ¶ 4). After observing and evaluating Barker, the EMTs concluded that his condition was not critical or life threatening. *Id.* at ¶ 6. Accordingly, they advised the jailor to arrange for Barker to see a doctor that day, during regular office hours. *Id.*

At approximately 12:00 noon on May 12, 1992, before Barker was taken to see a doctor, his traffic case was called by the Honorable Johnnie E. Crews, Judge of the Probate Court of Brantley County, Georgia. Barker appeared before Judge Crews, pleaded guilty to all charges and received a fine. Barker was then informed by Judge Crews that he would be released from jail. Barker was taken back to the jail for final processing, and he was released at approximately 12:45 P.M. Defendants contend that Barker asked about the location of his car, and the last time that Defendants saw Barker, he was walking in the direction of his car.

That evening, at 6:16 P.M., Barker reported to the emergency room of Southeast Georgia Regional Medical Center in Brunswick, Georgia. He was admitted to the hospital with acute pneumonia and was hospitalized for twenty-six days. After an initial period of receiving medication, it was determined that surgery would have to be performed on Barker. Barker is presently recovered from the pneumonia; however, "he has a permanent injury, a huge scar and greater susceptibility to lung infections in the future." (Pl.'s Supplemental Br. Opposing Def.s' Mot. for Summ.J. at 8). In addition, he incurred approximately $42,000 in medical bills. (Compl. at ¶ 23). He brings the instant action, arguing that Defendants failed to address his illness adequately, and when he pleaded guilty to the charges against him, he was too ill to waive knowingly his rights under the Sixth Amendment.

## DISCUSSION

### I. Standard for Summary Judgment

Summary judgment requires the movant to establish the absence of genuine issues of material fact, such that the movant is entitled

---

4:00 P.M. *Id.* If a medical need arises at a time other than during the hours of operation for the Brantley Family Care Center, the sheriff's department arranges for the Brantley County

Emergency Medical Service to come to the jail, whereupon an Emergency Medical Technician examines the prisoner. *Id.* at ¶ 6.

to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 153, 90 S.Ct. 1598, 1606, 26 L.Ed.2d 142 (1970). Summary judgment is also proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The nonmoving party to a summary judgment motion need make this showing only after the moving party has satisfied its burden. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). The court should consider the pleadings, depositions and affidavits in the case before reaching its decision, Fed. R.Civ.P. 56(c), and all reasonable inferences will be made in favor of the non-movant. *Adickes,* 398 U.S. at 158–59, 90 S.Ct. at 1608–09.

## II. *Section 1983 Action*

■ Section 1983 provides a civil action for persons claiming violations of their rights secured by either the Constitution or by federal laws, "broadly encompass[ing] violations of federal as well as constitutional law." *Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980).[2] In the present action, Barker premises his § 1983 action upon alleged violations of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

### A. Local Government Liability

■ Local governments are persons under § 1983, and may be held liable for official

**2.** Section 1983, in pertinent part, provides:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress. 42 U.S.C. § 1983.

**3.** Barker contends that Brantley County: (1) lacks a written policy to ensure the proper treatment of inmates; and, (2) failed to allocate sufficient funds to care for the treatment of inmates. This Court concurs with Defendants that these

policies or customs which violate a person's constitutional rights. *See Monell v. Department of Social Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). Local governments may also be found liable for the acts of their employees if the employees are acting in accordance with an official policy or custom. *Id.* at 694, 98 S.Ct. at 2037; *see also Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986). Liability may not, however, be based on the theory of *respondeat superior. Monell,* 436 U.S. at 691, 98 S.Ct. at 2036.

■ In the present action, Barker has failed to show any official policy or custom which subjected him to a violation of his constitutional rights.[3] As such, summary judgment for Defendant Brantley County, Georgia, is appropriate. Moreover, the Eleventh Circuit has noted that "[s]uits against [public] officials in their official capacities are effectively suits against the entity that those officials represent." *Free v. Granger,* 887 F.2d 1552, 1557 (11th Cir.1989). Accordingly, summary judgment is similarly proper for the remaining Defendants—Sheriff Cordell Wainright ("Wainright"), and jailors, Bryan DePratter ("DePratter"), Phil Purdom ("Purdom") and Crews—with regard to actions taken in their official capacities.

### B. Sheriff and Jailors in their Individual Capacities

Defendants, Wainright, DePratter, Purdom and Crews, contend that their acts were

allegations fail to support a finding of a policy or custom. First, it does not necessarily follow that, merely because Defendants do not have a written policy, their custom is to, in fact, provide inadequate medical treatment. As discussed below, Barker's treatment was not constitutionally impermissible and, therefore, Barker's assertion that the lack of a written policy resulted in improper treatment is without merit. Moreover, Barker has failed to show how the sufficiency of funds allocated for inmate care has resulted in a policy or custom to deprive inmates of their constitutional rights. Despite Barker's conclusory allegations, there is no evidence that Defendants' actions toward Barker were motivated by economic concerns.

in accordance with constitutional requirements, and they are protected from this suit, in their individual capacities, by qualified immunity. The United States Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Stough v. Gallagher*, 967 F.2d 1523, 1525 (11th Cir.1992). "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 818–19, 102 S.Ct. at 2738. The test is now called the "objective reasonableness" standard. *Stough*, 967 F.2d at 1525.

In *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Supreme Court clarified the *Harlow* test by rendering it more fact-specific. The Court in *Anderson* stated that the "contours of the [constitutional] right [in question] must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 639, 107 S.Ct. at 3038–39. *See Stough*, 967 F.2d at 1525; *Howell v. Evans*, 922 F.2d 712, 719, *vacated as moot*, 931 F.2d 711 (11th Cir.1991). In employing the qualified immunity test, a court must apply the facts in the light most favorable to the plaintiff. *Howell*, 922 F.2d at 718.

In the Eleventh Circuit the "objective reasonableness" standard is applied through a two-part analysis:

(1) The defendant public official must first prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'

(2) Once the defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part. The burden is met by proof demonstrating that the defendant public official's actions 'violated clearly established constitutional laws.'

*Stough*, 967 F.2d at 1526 (quoting *Rich v. Dollar*, 841 F.2d 1558, 1563–64 (11th Cir. 1988)). In the case *sub judice*, Defendants argue that Barker has failed to demonstrate that Defendants violated any of his clearly established constitutional rights.

It is settled that federal and state governments "have a constitutional obligation to provide minimally adequate medical care to those to whom they are punishing by incarceration." *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir.1991) (citing *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). For a plaintiff to prevail on a claim that inadequate medical attention rises to the level of an Eighth Amendment constitutional violation, the plaintiff must show that a defendant was "deliberately indifferent" to the plaintiff's "serious medical needs" and caused the plaintiff "unnecessary and wanton infliction of pain." *See Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

In the present action, Barker was not a convicted prisoner who had "secured a formal adjudication of guilt" and, therefore, he was not entitled to the rights secured by the Eighth Amendment. *Ingraham v. Wright*, 430 U.S. 651, 671 n. 40, 97 S.Ct. 1401, 1412, 51 L.Ed.2d 711 (1977). Nevertheless, "the Due Process Clause does protect pretrial detainees at least to the extent that the Eighth Amendment protects convicted prisoners." *McDay v. City of Atlanta*, 740 F.Supp. 852, 857 (N.D.Ga.1990) (citing *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983)), *aff'd*, 927 F.2d 614 (11th Cir.1991). Accordingly, "the Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee." *Id.*

In *Howell v. Evans*, 922 F.2d 712 (11th Cir.1991), the Eleventh Circuit addressed the deliberate indifference standard. The court first noted that "because mere negligent diagnosis or treatment of a patient does not

constitute deliberate indifference[, t]he law must ... be clear and specific enough for the medical official to know that his actions rise to the level of deliberate indifference and are not just negligent." *Id.* at 719 (citation omitted). The court then stated that a plaintiff may demonstrate such knowledge of deliberate indifference by a defendant by either: (1) showing that the facts are similar to prior cases where deliberate indifference was found; or, (2) "produc[ing] opinions of medical experts which assert that the official's actions were so grossly contrary to accepted medical practices as to amount to deliberate indifference." *Id.* at 719–20. Finally, under the first method of showing deliberate indifference, the court held that:

> [t]hus the standard for deliberate indifference focuses on the failure to provide or allow proper treatment in the face of information which reasonably should compel action. [footnote omitted]. Such deliberate indifference is often manifest by a refusal to act when certain actions were or should have been known to be necessary, rather than simply a failure to act. In some cases, however, if an official knows or should know that certain treatment is necessary, and he delays in providing such treatment when he reasonably should know that such delay can be hazardous, his actions could constitute deliberate indifference.

*Id.* at 720 (citation omitted).

With regard to the requirement that the deliberate indifference must be for a "serious medical need," this Court, in *Stevenson v. Copeland,* 1987 U.S.Dist. LEXIS 8761 (S.D.Ga.1987), enumerated cases in which other courts found medical conditions to be "serious." In particular, these conditions included severe pain from an infected tooth, *Fields v. Gander,* 734 F.2d 1313 (8th Cir. 1984); post-hepatitic cirrhosis, *Byrd v. Wilson,* 701 F.2d 592 (6th Cir.1983); an ulcer causing an inmate to vomit blood, *Westlake v. Lucas,* 537 F.2d 857 (6th Cir.1976); and, bone spurs which prevented an inmate from working his assigned job, *Speed v. Adams,* 502 F.Supp. 426 (E.D.Ark.1980).

■ In the present action, Barker's ailment, pneumonia, must without question be deemed a "serious medical need;" however, Barker has failed to demonstrate that Defendants were deliberately indifferent in addressing his illness. During the period of Barker's incarceration, he was taken to see Luebbert at the Brantley Family Care Center on two separate occasions. Moreover, EMTs were called to the jail to evaluate Barker on two other occasions. Despite Barker's claims that Defendants should have taken him to a hospital, neither Luebbert nor the EMTs recommended that Barker be taken to a hospital. Furthermore, Barker has failed to present any evidence that the course of treatment received from Luebbert was improper. He cites no cases suggesting that his treatment constitutes deliberate indifference, nor has he presented any "opinions of medical experts which assert that the official's actions were so grossly contrary to accepted medical practices as to amount to deliberate indifference." *Howell,* 922 F.2d at 719–20.

Citing *Howell,* 922 F.2d at 723, Barker correctly states that a prison official may not avoid liability by making decisions to act solely upon the advice of medical personnel. Barker, therefore, contends that the failure of any medical professionals to recommend that he be taken to a hospital does not absolve Defendants of liability for failing to do so. Nevertheless, the *Howell* holding does not alter the finding that Defendants' actions in the instant case were not improper. In *Howell,* the medical personnel determined that a certain course of treatment was necessary, and the treatment, though available at other institutions, was not available at the institution where the inmate was incarcerated. *Id.* at 722. The defendant prison superintendent knew of the recommended course of treatment, and he also knew that the treatment was available elsewhere. The defendant attempted to shield himself from liability by claiming that he did not seek to have the inmate transferred because his policy was to move a patient only upon a doctor's recommendation. *Id.* at 723. The court found that while the defendant had a "right to rely on medical professionals for *clinical* determinations," the decision to move the inmate was "*administrative,* an area ... un-

der [the defendant's] control." *Id.* (emphasis in original). Accordingly, the defendant could not shield himself from liability by claiming that the medical personnel failed to advise the removal of the inmate.

In the present case, Defendants did not fail to carry out an administrative function by failing to take Barker to a hospital. Instead, they, at all times, relied upon clinical determinations. Neither Luebbert nor the EMTs ever suggested to Defendants that Barker was in need of some form of treatment that was unavailable in the Brantley County jail. Barker was prescribed medication by Luebbert, and Defendants were never given any indication by any medical professionals that a different course of treatment was required. Consequently, Barker's contention that it was improper for Defendants to rely upon the medical assessment is without merit.

■ Barker, nevertheless, maintains that the course of treatment prescribed by Luebbert was not properly followed and, therefore, Defendants are still liable. As support, Barker notes the several instances in the Record where no notation was made whether his medication was administered. In response, Defendants claim that the Erythromycin was offered at all appropriate times; however, Defendants merely forgot to make a notation in the Record. Accepting Barker's contention that Defendants did, in fact, fail to administer the medication on those instances, Barker has not presented any indication that such failure was the result of deliberate indifference. Barker concedes that when he asked for his medication, although he may not have received it at that moment, Defendants never refused to give it to him. (Barker Dep. at 140). As such, any failure by Defendants to provide Barker with his medication was at most negligent, which is insufficient to constitute a claim of deliberate indifference. *Howell,* 922 F.2d at 720.

Barker, then, asserts that there was an improper motive in moving his court date up two weeks, and Defendants, having been advised on the morning of May 12 that Barker should see a doctor that day, acted improperly by releasing Barker without taking him to a doctor. With regard to the change of Barker's court date, Defendants present the affidavit of Judge Crews wherein he states:

As probate judge, it has been my policy to make inquiries of and keep in contact with Brantley County Sheriff's Department concerning the status of certain inmates. If an inmate arrested on traffic or other very minor charges is indigent or otherwise unable to post a bond to secure his release from jail prior to his scheduled court appearance, and the inmate desires to enter a guilty plea to the charges, I am often willing to entertain and accept the entry of a guilty plea prior to the inmate's regularly scheduled court date. In such cases, it is my policy to accept the plea, issue an appropriate sentence, allow any fine imposed to be collected through the probation office, and order the inmate's release from jail.

(Crew Aff. at ¶ 3). Judge Crews further states that, having been advised of Barker's status by Wainright, Judge Crews arranged for an earlier appearance for Barker. *Id.* at ¶¶ 4–6. In response, Barker fails to refute Judge Crews's statements, and he merely presents unsupported allegations that the court date was changed because the medical treatment was too expensive.

■ Finally, with regard to the release of Barker prior to taking him to a doctor's appointment, Barker has failed to demonstrate how such action rises to the level of deliberate indifference. After their evaluation, the EMTs concluded that Barker's "condition was not critical or life threatening." (Evors Aff. at ¶ 6). Defendants, therefore, were given no indication by the EMTs that Barker required immediate medical attention. Moreover, as Defendants note, Barker's own physicians have refuted any connection between the delay in Barker's obtaining medical assistance and his eventual need for surgery. (Saleeby Dep. at 45–46; Martinez Dep. at 37–38). Barker has, thus, failed to demonstrate that Defendants' actions constitute deliberate indifference to his need for medical treatment.

## C. Sixth Amendment Claims

■ Barker contends that when he was taken before Judge Crews, he "was seri-

ously ill, and he was too sick to knowingly and intelligently waive his rights under the Sixth Amendment of the United States Constitution." (Compl. at ¶ 20). He argues that he did not knowingly waive his right to the assistance of counsel; however, as Defendants correctly note, the Sixth Amendment only requires that an "indigent criminal defendant [may not] be *sentenced to a term of imprisonment* unless the State has afforded him the right to assistance of counsel." *Scott v. Illinois*, 440 U.S. 367, 374, 99 S.Ct. 1158, 1162, 59 L.Ed.2d 383 (1979) (emphasis added). Accordingly, because Barker was only charged with traffic offenses for which he was not sentenced to a term of imprisonment, his contention that he did not knowingly waive his right to counsel is without merit. Moreover, as Defendants further note: (1) Barker acknowledges that he did, in fact, commit the offenses; (2) he entered a guilty plea in order to get released from jail; and, (3) he would have entered a guilty plea immediately after his arrest had he been given such an opportunity. (Barker Dep. at 146–47 & 152). As such, Barker's claims that he entered a guilty plea merely because he was ill and that he did not do so knowingly, are not supported by the evidence. Summary judgment is, therefore, appropriate for Barker's Sixth Amendment claims.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is hereby **GRANTED.** The Clerk of Court is directed to enter an appropriate judgment in favor of Defendants.

**SO ORDERED.**