John D. STOUGH, Plaintiff–Appellee,

v.

Walter J. GALLAGHER, Defendant–
Appellant.

No. 91–3913.

United States Court of Appeals,
Eleventh Circuit.

Aug. 7, 1992.

G. Yates Rumbley, Eubanks, Hilyard, Rumbley, Meier & Lengauer, P.A., Orlando, Fla., for defendant-appellant.

Alton G. Pitts, Orlando, Fla., for plaintiff-appellee.

Before KRAVITCH and HATCHETT, Circuit Judges, and BROWN *, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this public employee demotion case, we affirm the district court's ruling that a sheriff is not entitled to qualified immunity for the demotion of a deputy based upon the deputy's political speech.

## I. FACTS

In 1988, Lawson L. Lamar, the Sheriff of Orange County, Florida, announced that he would not run for reelection. Walter J. Gallagher, a captain and sector commander with the Sheriff's Office announced his candidacy for sheriff. John D. Stough, another Sheriff's Office captain and sector commander, decided to support another deputy and candidate, Terry James. During off-duty hours, Stough worked and made speeches on James's behalf, contributed money to James's campaign, and solicited others to contribute money.

In the September party primary elections, Gallagher won the nomination as the Republican candidate, and James won the nomination as the Democrat candidate. After the primaries, Stough continued to speak on James's behalf and did so at a political forum which Gallagher attended. In his speech at this forum, Stough compared his background with that of Gallagher's and concluded that neither he nor Gallagher possessed the' qualifications to be sheriff. Thus, Stough urged the audience to vote for James. Gallagher won the election in November, 1988, and upon assuming office demoted Stough two ranks, from captain to sergeant, despite Stough's thirteen years as an Orange County deputy sheriff. Sheriff Gallagher assigned Stough the duties of a lieutenant, but refused to promote Stough to the rank of lieutenant and refused to raise his salary and benefits to the level of lieutenant.

* Honorable Bailey Brown, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designa-

The former sheriff, Lawson Lamar, promulgated a career service policy and procedure manual (Series 7000) which became effective October 1, 1987. Section 7003.3 of the published policy established and recognized five levels of supervisory or managerial positions as being career service positions for deputies who met certain prerequisites. According to the manual, the rank of captain was the highest level career service position. It is undisputed that Stough, a captain in 1988, had met the prerequisites set forth in the Series 7000 policy.

Section 7007.1 provided that "[w]hen a newly elected or appointed Sheriff assumes office, the new Sheriff shall continue the status of current Career Service personnel unless cause for dismissal or demotion exists." The manual defined "cause" at section 7007.2 as "misfeasance, nonfeasance or malfeasance of office." The policy, however, also stated that "this policy shall not be held nor construed to create any property rights or any vested interest in any position in the career service and the right is hereby reserved to repeal, alter, or amend this policy or any provision thereof at any time." Sheriff Gallagher did not rescind, repeal, alter, amend, or abolish the career service policy, and in 1989, republished it in his manual.

## II. PROCEDURAL HISTORY

On January 3, 1991, Stough filed this lawsuit against Sheriff Gallagher seeking money damages and injunctive relief pursuant to section 1983 for First Amendment and Fourteenth Amendment violations. Specifically, Stough alleged that Sheriff Gallagher demoted him from the rank of captain and subsequently failed to promote him from sergeant to lieutenant as retaliation for Stough's association with and political speech in support of Gallagher's political opponent in the sheriff's election of 1988. Sheriff Gallagher filed a motion for

tion.

summary judgment alleging, among other things, qualified immunity. The district court denied Gallagher's motion for summary judgment.

## III. ISSUES

On appeal, Sheriff Gallagher raises the following issues: (1) whether reducing Stough's rank due to his political speech and activities violated clearly established law; and (2) whether reducing Stough's rank constituted a deprivation of constitutionally recognized and protected property rights.

## IV. CONTENTIONS

Sheriff Gallagher contends that even if the adverse personnel actions he took were due to Stough's speech and other activities on behalf of Gallagher's political opponent, such actions were not violative of clearly established First Amendment law. Additionally, Sheriff Gallagher also contends that Stough's claim that Gallagher deprived him of property rights is without merit because deputy sheriffs lack a property or liberty interest in their positions for purposes of the Fourteenth Amendment. On the other hand, Stough contends that his speech was on a matter of public concern and Sheriff Gallagher demoted him because of that speech, in violation of clearly established First Amendment law. Stough also contends that Sheriff Gallagher's actions violated clearly established due process law.

## V. DISCUSSION

A. Qualified Immunity and the First Amendment

The Supreme Court held in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) that "government officials generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. Additionally, the Supreme court held that a right is clearly established only if

[t]he contours of the right [are] ... sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law, the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). This objective "reasonableness" standard affords qualified immunity protection to "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

The Supreme Court created the doctrine of qualified immunity to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. In *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Supreme Court pointed out that the entitlement of qualified immunity "is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815. Thus, *Harlow* and its progeny share the common goal of "keep[ing] the public official out of the courtroom, free to exercise discretionary duties under clearly established law without the constant threat of lawsuits." *Ansley v. Heinrich*, 925 F.2d 1339, 1347 (11th Cir.1991).

In applying the objective reasonableness standard announced in *Harlow*, this court must "conduct its review through the eyes of an objective, reasonable government official." *Nicholson v. Georgia Dept. of Human Resources*, 918 F.2d 145, 147 (11th Cir.1990). We held in *Nicholson* that the

relevant inquiry is "could a reasonable official have believed his or her action to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." *Nicholson*, 918 F.2d at 147. The objective reasonableness standard is to be applied through the use of the following two-part analysis:

> (1) The defendant public official must first prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.' (2) Once the defendant public official satisfies his burden of moving forth with the evidence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part. This burden is met by proof demonstrating that the defendant public official's actions 'violated clearly established constitutional laws.'

*Rich v. Dollar*, 841 F.2d 1558, 1563–64 (11th Cir.1988) (quoting *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir.1983) (per curiam)). In *Rich*, this court also pointed out that the second prong of the objective reasonableness test poses two questions of law which must be answered: (1) what was the clearly established law at the time of the public official's actions, and (2) whether the public official's conduct violated that clearly established law. *Rich*, 841 F.2d at 1564. To determine whether, at the time of this incident, Stough had a clearly established right not to be demoted for his political speech, the court must look to established law in the area. *See Greason v. Kemp*, 891 F.2d 829, 833 (11th Cir.1990).

### 1. *Acting Within Scope of Discretionary Authority*

██ In applying the objective reasonableness standard to Sheriff Gallagher's conduct of demoting Stough, this court initially must determine if Sheriff Gallagher has satisfied the first part of the *Rich* analysis. This court noted in *Rich* that "a government official can prove he acted within the scope of his discretionary authority by showing 'objective circumstances

which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.'" *Rich*, 841 F.2d at 1564 (quoting *Barker v. Norman*, 651 F.2d 1107, 1121 (5th Cir. Unit A 1981)). Sheriff Gallagher was clearly acting within the scope of his discretionary authority because as a Florida sheriff he had absolute control over the selection and retention of his deputy sheriffs. *See Tanner v. McCall*, 625 F.2d 1183, 1186 (5th Cir.1980), *cert. denied*, 451 U.S. 907, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981). Since Sheriff Gallagher had absolute control over Stough's selection and retention, it necessarily follows that the act of demoting Stough was in Sheriff Gallagher's discretionary authority.

### 2. *Lack of Good Faith*

The objective reasonableness standard next requires the application of the second part of the *Rich* analysis in order to determine if Sheriff Gallagher is entitled to qualified immunity. This court must determine whether Stough has established that Sheriff Gallagher's action of demoting him lacked good faith because the action violated clearly established First Amendment law. *Rich*, 841 F.2d at 1563–64.

### a. The Clearly Established Law

██ The Supreme Court has held that "it has been settled that a State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983). This protection, however, is not absolute because "the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). The Supreme Court also recognized in *Pickering* that

courts must balance the interests of the public employees, as citizens, in engaging in political expression and the interest of "the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734. In seeking to arrive at this balance, the Supreme Court has developed two different methods for analyzing the variety of ways in which political expression may be the basis for discharge of a public employee. These two methods make a distinction between cases involving employee political patronage and cases involving employee speech. *See Terry v. Cook*, 866 F.2d 373, 375 (11th Cir. 1989).

The paradigm political patronage case involves a situation in which an employee's retention of public employment is conditioned on the employee's support of the political party in office. *See, e.g., Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Justice Brennan speaking for a plurality of the court announced the following method for analyzing political patronage cases:

> In short, if conditioning the retention of public employment on the employee's support of the in-party is to survive constitutional challenge, it must further some vital government end by a means that is least restrictive of freedom of belief and association in achieving that end, and the benefit gained must outweigh the loss of constitutionally protected rights.

*Elrod*, 427 U.S. at 363, 96 S.Ct. at 2685. In *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1979), the Supreme Court revisited the political patronage method of analysis and held that the relevant inquiry is "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti*, 445 U.S. at 518, 100 S.Ct. at 1295. This method does not require open-ended inquiries into specific workplace relationships that may underlie overt expressive conduct because the public employee's interests and the public employer's interests are essentially fixed and unvarying in the raw political patronage context. *See Jones v. Dodson*, 727 F.2d 1329, 1335 n. 6 (4th Cir.1984), *cited with approval in Terry v. Cook*, 866 F.2d 373, 376–377 (11th Cir.1989).

The court in *Dodson* correctly pointed out that cases involving the "overt expression of ideas" or political speech, unlike political patronage cases, require the open-ended inquiry or method of analysis the Supreme Court established in *Pickering*. *See Dodson*, 727 F.2d at 1335 n. 6. In *Rankin v. McPherson*, 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987), the Supreme Court held that

> [t]he determination whether a public employer has properly discharged an employee for engaging in speech requires 'a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'

*Rankin*, 483 U.S. at 383, 107 S.Ct. at 2896 (quoting *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734). In applying the balancing test in the speech context, the court must first determine as a threshold question whether the speech addressed a matter of public concern. *Rankin*, 483 U.S. at 384, 107 S.Ct. at 2896–97. Political speech addressing public issues or candidates running for public office invariably address matters of public concern because it is "the unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Roth v. United States*, 354 U.S. 476, 484, 77 S.Ct. 1304, 1308, 1 L.Ed.2d 1498 (1957); *see also Connick*, 461 U.S. at 145, 103 S.Ct. at 1689.

After establishing the threshold issue that the speech in question is a matter of public concern,

> the statement [or speech] will not be considered in a vacuum; the manner,

time, and place of the employee's expression are relevant, as is the context in which the dispute arose.... pertinent considerations [are] whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.

*Rankin*, 483 U.S. at 388, 107 S.Ct. at 2899 (citations omitted). Because political speech cases require an open-ended inquiry concerned with specific work-relationships, the Supreme Court did not lay down a general standard against which employee speech is to be judged. *Pickering*, 391 U.S. at 569, 88 S.Ct. at 1735. Thus, the court must balance the competing interests on a case-by-case basis. *See Dartland v. Metropolitan Dade County*, 866 F.2d 1321 (11th Cir.1989).

■ Sheriff Gallagher argues that his demotion of Stough was not violative of clearly established First Amendment law. Relying upon *Terry v. Cook*, 866 F.2d 373 (11th Cir.1989), Sheriff Gallagher asserts that demoting Stough was the least restrictive means for meeting the needs of public service in light of the fact that Stough was a captain in the sheriff's organization, a position that was highly confidential, and which involved both policy making and public contact. Sheriff Gallagher's argument, however, is based upon the erroneous assumption that this case, like *Terry*, is appropriately viewed as a political patronage case. Although Stough and Sheriff Gallagher belonged to opposing political parties and Stough supported Sheriff Gallagher's opponent during the election, this case primarily concerns Stough's political speech in support of Sheriff Gallagher's opponent. Thus, Sheriff Gallagher's action of demoting Stough for political speech and campaigning activities for the opposition is appropriately viewed under the speech category and analyzed using the *Pickering–*

*Connick–Rankin* test. *See, e.g., Joyner v. Lancaster*, 815 F.2d 20 (4th Cir.1987) (newly elected sheriff's discharge of one deputy sheriff for loud and open campaign for the opposition when twenty to thirty other employees state that deputy's activities were causing "pervasive distrust and plummeting morale" subject to *Connick* analysis), *cert. denied*, 484 U.S. 830, 108 S.Ct. 102, 98 L.Ed.2d 62 (1987), *cited with approval in, Terry*, 866 F.2d at 376. Thus, we must determine, in light of *Pickering, Connick* and *Rankin* whether a reasonable sheriff could have believed that his actions were lawful.

b. Violation of Clearly Established Law

■ Sheriff Gallagher admits that the speech addressed matters of public concern. Additionally, he has assumed for purposes of this appeal that Stough's political speech was a substantial or motivating factor in the demotion decision. Thus, this court can apply the balancing test set out in *Pickering*. *See Maples v. Martin*, 858 F.2d 1546, 1552 (11th Cir.1988).

*Dartland v. Metropolitan Dade County*, 866 F.2d 1321 (11th Cir.1989) states this circuit test for determining whether a reasonable public official's actions were lawful in light of *Pickering* and its progeny. In *Dartland*, this court held that

[b]ecause no bright-line standard puts the reasonable public employer on notice of a constitutional violation, the employer is entitled to immunity except in the extraordinary case where *Pickering* balancing would lead to the inevitable conclusion that the discharge of the employee was unlawful.

*Dartland*, 866 F.2d at 1323. Because the *Pickering* balance must lead to the inevitable conclusion that Sheriff Gallagher's action was unlawful, we need not decide the precise result of applying the *Pickering* balancing test to this case. *Dartland*, 866 F.2d at 1324. We must decide only whether such a balancing result would be so clearly in favor of protecting Stough's

right to speak that a reasonable official in Sheriff Gallagher's position would necessarily know that demoting Stough violated Stough's constitutional rights. *Dartland,* 866 F.2d at 1323; *see also Busby v. City of Orlando,* 931 F.2d 764, 774 (11th Cir.1991).

Stough's speech encouraged voters to vote for candidate Terry James. On Stough's side of the *Pickering* scale is his interest in commenting on the qualifications of political candidates. This type of speech "is more than self-expression; it is the essence of self-government" and occupies the "highest rung of the hierarchy of First Amendment values" entitling it to special protection. *Connick,* 461 U.S. at 145, 103 S.Ct. at 1689.

Additionally, the manner, time, and place of Stough's speech greatly tips the *Pickering* balancing scale in Stough's favor. Stough correctly points out that he made his speech (1) during his off-duty hours; (2) on a public platform before potential voters; (3) before Sheriff Gallagher became sheriff; and (4) while the voters were seeking information on whether Gallagher should become sheriff. Stough also correctly · notes that he did not make his speech at the Sheriff's Office or at a function of the Sheriff's Office, such as a meeting of deputies, and his speech was not rude or insulting to Gallagher.

On Sheriff Gallagher's side of the *Pickering* scale is his interest in promoting the efficiency of the public services his office performs through his employees. *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734. Sheriff Gallagher, however, has failed to show that Stough's speech adversely affected this important interest. Sheriff Gallagher has presented no evidence to demonstrate that Stough's speech adversely affected the ability of supervisors to discipline subordinates or that the speech disturbed the harmony among co-workers. Additionally, Sheriff Gallagher has not demonstrated that Stough's statements impeded performance of duties or that the statements detrimentally impacted upon close working relationships upon which personal loyalty and confidence are necessary.

. The uncontradicted evidence ·demonstrates that immediately following the election and before Gallagher assumed office, Stough assured Gallagher that he would be loyal, work harmoniously, and be fully supportive. Sheriff Gallagher admitted in his deposition that he had been pleased with Stough's performance under his command and that he had seen nothing in writing that would indicate to him that Stough could not operate efficiently and well as a captain and sector commander. Sheriff Gallagher also admitted in his deposition that he agreed with Stough's job performance evaluations which rated Stough highly and recommended promotion.

Sheriff Gallagher's claim that Stough's speech detrimentally impacted close working relationships for which personal loyalty and confidence are necessary can be given no weight because of his republication of the Career Service Policy and Procedure (Series 7000). The Series 7000 established that personal political loyalty to the sheriff was not a prerequisite for sworn officers up through the rank of captain. Thus, Sheriff Gallagher has decided that the rank of captain is not so closely identified with the sheriff that personal loyalty is required, and that a political dispute between the sheriff and a captain may not necessarily disrupt normal working conditions. The fact that two levels of command separate Sheriff Gallagher from his captains also supports the conclusion that personal political loyalty is not a prerequisite for the rank of captain.

Under *Pickering,* it is clear that Sheriff Gallagher's demotion of Stough for engaging in constitutionally protected speech violated clearly established first amendment law. A reasonable public official in Sheriff Gallagher's place could not have believed, in light of the holdings and rationales of *Pickering* and *Connick* and *Rankin,* that demoting Stough did not violate the First Amendment. Thus, Sheriff Gallagher is not entitled to summary judgment on the basis of qualified immunity with respect to Stough's First Amendment claim.

## B. The Due Process Claim

Sheriff Gallagher also contends that his action of demoting Stough did not deprive Stough of a protected property right in violation of the Due Process Clause. Specifically, Sheriff Gallagher contends that his action did not violate the Due Process Clause because Stough does not have a property interest in continued employment. The Supreme Court has held that "[p]roperty interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 558, 105 S.Ct. 1487, 1503, 84 L.Ed.2d 494 (1985) (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)).

■ In *Murphy v. Mack,* 358 So.2d 822, (1978) the Florida Supreme Court held that

> [t]he office of under or deputy sheriff is a common-law office; and this is the rule unless a change is effected by the constitution or statute law of the state. He holds an appointment, as distinguished from an employment. Where so clothed with power, a deputy sheriff is a public officer, although he many not be a state or municipal officer within the meaning of the constitution.

*Murphy,* 358 So.2d at 825. This unique historical status has led this court to conclude that a sheriff, in Florida, has absolute control over the selection and retention of his deputy sheriffs. *See Tanner v. McCall,* 625 F.2d 1183, 1186 (5th Cir.1980), *cert. denied,* 451 U.S. 907, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981). Because deputy sheriffs are not employees and both their selection and retention come under the absolute control of the sheriff, courts have held that Florida deputy sheriffs have no property or liberty interests in their positions for purposes of the Fourteenth Amendment. *See Sikes v. Boone,* 562 F.Supp. 74 (N.D.Fla.1983), *aff'd,* 723 F.2d

918 (11th Cir.1983), *cert. denied,* 466 U.S. 959, 104 S.Ct. 2171, 80 L.Ed.2d 555 (1984); *Tanner v. McCall,* 441 F.Supp. 503 (M.D.Fla.1977), *modified,* 625 F.2d 1183 (5th Cir.1980), *cert. denied,* 451 U.S. 907, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981); *Szell v. Lamar,* 414 So.2d 276 (Fla. 5th DCA 1982). Since Stough has no property interest in his position or job, it necessarily follows that he had no property interest in his rank of captain.

■ Additionally, the internal personnel policy provisions that Sheriff Gallagher promulgated are not the equivalent of a statutory civil service system and did not give Stough any property interest in his previous rank of captain. *See Szell,* 414 So.2d at 278; *see also Wilkerson v. Butterworth,* 492 So.2d 1169, 1170 (Fla. 4th DCA 1986). This court has held that the receipt of a grievance procedure in an employee manual published well after the commencement of the employee's employment does not constitute a binding contract on the employer. *Caster v. Hennessey,* 727 F.2d 1075 (11th Cir.1984) (construing Florida law). Additionally, the policies and procedures cannot constitute definite terms of a contract since the sheriff could unilaterally change, alter or amend the provisions at any time. Thus, Sheriff Gallagher is entitled to summary judgment with respect to Stough's Due Process claim.**

## VI.  CONCLUSION

Because a reasonable public official in Sheriff Gallagher's place could not have believed that demoting Stough did not violate First Amendment law, Sheriff Gallagher is not entitled to summary judgment on the basis of qualified immunity with respect to Stough's First Amendment claim. Sheriff Gallagher, however, is entitled to summary judgment with respect to Stough's Due Process Claim because Stough did not have a property interest in his rank of captain. Accordingly, we affirm the district court's denial of Sheriff

** Chapter 89–507, Laws of Florida was not in  effect at the time of Stough's demotion.

Gallagher's motion for summary judgment with respect to Stough's First Amendment claim and reverse the district court's denial of Sheriff Gallagher's motion for summary judgment with respect to Stough's due process claim.

AFFIRMED IN PART AND RE-VERSED IN PART.