PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 94-2112
_____

D.C. Docket No. 92-983-CIV-ORL-19

T. DEXTER ROGERS, ROBERT AOUN, GREGORY SHEA, BURTON "Jimmy" BROWN,

                                   Plaintiffs-Appellees,

                              versus

C.W. MILLER, individually and in his capacity as Brevard County Sheriff; RON CLARK, individually and in his capacity as a Chief Deputy in the Brevard County Sheriff's Office; JIMMY JACKSON, individually and in his capacity as a Lieutenant in the Brevard County Sheriff's Office; THOMAS EDWARDS, individually and in his capacity as a Commander in the Brevard County Sheriff's Office; VERNON WEEKLY, individually and in his capacity as a Commander in the Brevard County Sheriff's Office; THOMAS M. ROBINSON, individually and in his capacity as an Inspector in the Brevard County Sheriff's Office,

                              Defendants, Cross-Claim Defendants-
                              Appellants,

JAMES DONN, etc., et al.,

                              Defendants-Cross-Claim Defendants,

BREVARD COUNTY,

                              Defendant-Cross-Claimant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

**(June 22, 1995)**

Before HATCHETT, Circuit Judge, HENDERSON, Senior Circuit Judge, and YOUNG*, Senior District Judge.

_____
*Honorable George C. Young, Senior U.S. District Judge for the Middle District of Florida, sitting by designation.

PER CURIAM:

The appellants in this case, various members of the Brevard County, Florida Sheriff's Department ("Department"), seek review of an order entered in the United States District Court for the Middle District of Florida, denying their motions for summary judgment grounded upon qualified immunity in an action filed pursuant to 42 U.S.C. § 1983.[1] We reverse the denial of qualified immunity and remand the case for further proceedings.

## I. BACKGROUND

At the time of the events giving rise to the complaint, the plaintiffs, T. Dexter Rogers, Robert Aoun, Gregory Shea and Burton "Jimmy" Brown, were members of the Department's "D-Squad." During the 1992 political campaign for the Office of Sheriff, they supported George DeRise, the opponent of the incumbent sheriff, C. W. Miller. Prior to the November 1992 election, the plaintiffs filed this § 1983 action alleging that Miller and nine other supervisory members of the Department (James Donn, Ron Clark, Jimmy Jackson, Tommy Edwards, Vernon Weekley, John Cappolla, Thomas M. Robinson, Thomas Fair and Michael Wong), infringed on their First

---

[1]Section 1983 provides in relevant part:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Amendment rights by taking adverse employment action against them in retaliation for their political support of DeRise. The plaintiffs sued the defendants in their individual and official capacities and sought damages, unspecified injunctive relief, costs and attorney's fees. After the lawsuit was instituted, Miller, who was reelected, directed that the plaintiffs be transferred, to the extent practicable, to positions in which they would not be under the direct supervision of the above named defendants. The resulting transfers did not involve demotions in pay or rank for any of the plaintiffs, but did cause them alleged hardship or loss of supervisory responsibilities.[2] The plaintiffs thereafter amended the complaint to include, inter alia, allegations that the new assignments were retaliatory and constituted constructive discharges from their former positions.[3]

The defendants subsequently sought summary judgment, both on the merits and on qualified immunity grounds. The district court granted judgment to all the defendants in their official capacities except for Miller. It also dismissed the constructive discharge claims because the plaintiffs failed to show that their working conditions after the transfers were such that a reasonable person would have felt compelled to resign. With respect to the First

---

[2]Shea was transferred from the relief shift to the day shift, which put him to the trouble and expense of having to enroll his children in day care. Aoun contends that after he was transferred, he was deprived of his duties as a Field Training Officer. All of the plaintiffs allege that the changes imposed an inconvenience on their daily routines.

[3]The constructive discharge claims were filed on behalf of Brown, Rogers and Aoun, who resigned after they were transferred.

3

Amendment cause of action against the defendants in their individual capacities, the court granted judgment on the merits to Donn, Cappolla, Fair and Wong, finding there was no evidence that these defendants participated in any adverse employment conduct against the plaintiffs due to their political support of DeRise. The court denied judgment on the merits to Miller, Clark, Jackson, Robinson, Edwards and Weekley, and also held that they were not entitled to qualified immunity from damages. Those defendants appeal only the denial of their qualified immunity defense.

## II. DISCUSSION

Although the district court did not resolve all of the issues pending in the case, the appellate court has jurisdiction, under the collateral order doctrine, to review the denial of the motion for summary judgment grounded on qualified immunity. Mitchell v. Forsyth, 472 U.S. 511, 524-30, 105 S.Ct. 2806, 2814-17, 86 L.Ed.2d 411, 424-27 (1985). Qualified, or "good faith" immunity shields government officials from liability for civil damages arising out of the performance of their discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[4] Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982). That the defendants' actions

---

[4]The qualified immunity defense has no application to charges asserted against government actors in their official capacities, or to attempts to gain injunctive relief. Lassiter v. Alabama A & M Univ., 28 F.3d 1146, 1149 n.2 (11th Cir. 1994). The sole issue before us is whether the district court erred by denying the defense with respect to the alleged liability of the defendants in their individual capacities.

fell within the scope of their discretionary duties is without dispute. Thus, our inquiry is confined to whether the record, taken in the light most favorable to the plaintiffs, reveals violations of clearly established law. Bennett v. Parker, 898 F.2d 1530, 1532 (11th Cir. 1990), cert. denied, 498 U.S. 1103, 111 S.Ct. 1003, 112 L.Ed.2d 1085 (1991); see also id. at 1535 n.2 (when evaluating the qualified immunity defense in the context of a motion for summary judgment, the court must consider all facts fairly inferable from the record in favor of the plaintiff, even if in dispute, and decide whether, under those facts, the defendant's conduct violated law clearly established at the time) (Tjoflat, C.J., concurring). This is purely a question of law, which we review de novo. Elder v. Holloway, 510 U.S. ___, ___, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344, 351 (1994).

This court has observed that "defendants who allegedly violate public employees' First Amendment freedoms rarely act within 'clearly established contours of law[.]" Hansen v. Soldenwagner, 19 F.3d 573, 575 (11th Cir. 1994).

> The Supreme Court has never established a bright-line standard for determining when the State as an employer may take action adverse to an employee in response to that employee's speech. Instead, the Court has balanced the interest of the employee in commenting on matters of public concern against the interest of the employer in performing public services efficiently. The court must necessarily balance these interests on a case-by-case basis. Because of this case-by-case approach, "[t]here will rarely be a basis for [an] a priori judgment that the termination or discipline of a public employee violated 'clearly established' constitutional rights." Because no bright-line standard puts the

5

> reasonable public employer on notice of a
> constitutional violation, the employer is
> entitled to immunity except in the
> extraordinary case where [the] Pickering
> balancing [test] would lead to the inevitable
> conclusion that the [adverse action] was
> unlawful.

Dartland v. Metropolitan Dade County, 866 F.2d 1321, 1323 (11th Cir. 1989) (referring to Pickering v. Board of Educ., 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)) (footnote and citations omitted) (alterations added and in the original) (emphasis added).

Under the Pickering balancing test, the court first determines whether the speech in question involves a matter of public concern warranting First Amendment protection. Bryson v. City of Waycross, 888 F.2d 1562, 1565 (11th Cir. 1989). If so, the court then weighs the employee's interest in speaking out, "against 'the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees.'" Id. (quoting Pickering, 391 U.S. at 568, 88 S.Ct. at 1734-35, 20 L.Ed.2d at 817). Because entitlement to qualified immunity is fact specific, before engaging in this analysis we must examine in detail the contentions and inferences arising from the record regarding each of the defendants' conduct.

A.   Weekley

On September 15, 1992, Weekley informed Aoun that Miller was extremely upset over the plaintiffs' political views and asked him whether the plaintiffs were exerting pressure on the other members of "D-Squad" to support DeRise. Weekley told Aoun he did not want to see Aoun get hurt and advised him to avoid politics. That same

6

day, Weekley spoke with Rogers because Rogers' name was on a list of contributors to the DeRise campaign. Weekley advised Rogers that he heard that Rogers might have violated a prohibition against on-duty campaigning by purchasing stamps for the DeRise campaign during working hours and warned him, "you're not prepared for the grief you're going to have . . . more grief than you can stand[,]" because of his support of DeRise.[5]

B.  <u>Jackson</u>

On August 19, 1992, Jackson telephoned Shea and advised him, as a friend, to reevaluate his support for DeRise and to stay out of politics. Shea did not regard Jackson's comments as threatening and understood that Jackson was expressing his personal opinion. On September 18, 1992, Jackson addressed a training class attended by the plaintiffs and others. He informed those present that Miller had demoted him in the past because he refused to fire a deputy who had openly supported one of Miller's political opponents. He advised the members of the class to "keep their political opinions to themselves until [they were] in the voting booth."

---

[5]The plaintiffs also advanced claims in connection with conversations between Weekley and Rogers about Rogers' plan to move into the house of friend who was embroiled in a property dispute with a neighbor and had threatened to sue the Department for failing to enforce a resulting restraining order. According to the complaint, Weekley prohibited Rogers from moving in with the friend because "it was not a good year to embarrass the Sheriff." It is undisputed that all of this took place before Weekley had knowledge of Rogers' affiliation with DeRise. These contentions are therefore irrelevant to the First Amendment retaliation charges.

C.   Robinson

The allegations against Robinson concern a tour of the Sharpes Correctional Facility, which was arranged for the benefit of Shea on September 28, 1992.  The tour was in response to a telephone call Shea made to a television talk show during an appearance by Miller and DeRise.  Shea asked the candidates whether the minimum security section of the jail was being fully staffed and utilized. In Robinson's opinion, Shea's question had the potential to jeopardize a pending bond referendum for jail expansion, which could adversely affect the morale of the facility's staff.  He believed Shea should have expressed his concerns privately through the chain of command rather than publicly.  Robinson conducted the tour in a manner which Shea felt was designed to embarrass him and reminded Shea that he owed his loyalty to Miller.

D.   Clark

In September 1992, Clark learned that Brown made derogatory comments about Clark and Miller while dining at a local restaurant with members of the DeRise campaign.  In response, Clark instructed Weekley to tell Brown "that the Sheriff is a politician and is fair game, but I am not.  I know what he said about me at Perkins Restaurant last week and, if it happens again, I will deal with him personally."

E.   Edwards

In January 1993, Edwards classified Rogers as chronically absent, which, under Department rules, rendered him ineligible for transfers and tuition reimbursement for six months and required him

8

to produce a doctor's note for future sick days. It is clear that between November 1992 and January 1993, Rogers was not present for twenty-three of his fifty-three scheduled work days. Rogers contends that most of his absences were due to work-related stress or illnesses, therefore, they should not have been counted against him. He failed to offer this excuse at the time of the absences, however, and he made no attempt to administratively appeal the chronic absentee decision.

F.   Miller

The plaintiffs contend that Miller either directed or ratified the foregoing course of conduct in order to chill their speech rights and in retaliation for their support of DeRise. He also instructed Clark to transfer the plaintiffs after some of the defendants expressed discomfort with exercising supervisory roles during the pendency of the present litigation. Pursuant to Miller's order, Rogers was transferred from Weekley's command in the central precinct to Edwards' supervision in the north precinct. Although Edwards was a party to the lawsuit, at that time the complaint contained no allegations against him.[6] Brown and Aoun were transferred from the central precinct to the south precinct, where none of the defendants worked. Shea remained in the central precinct, but was switched from the relief shift to the day shift in order to reduce his contact with the defendants.

_____

[6]A specific claim was not lodged against Edwards until after he placed Rogers on the chronic absentee list in January 1993.

In denying qualified immunity, the district court held that this court's decision in Stough v. Gallagher, 967 F.2d 1523 (1992), should have put the defendants on notice that their actions were unlawful. The Stough case arose out of the 1988 political campaign for the Office of Sheriff in Orange County, Florida. After the incumbent sheriff announced he would not seek reelection, Walter J. Gallagher, a captain and sector commander, sought the post. Stough, also a captain and sector commander, was a vocal supporter of Gallagher's opponent, Terry James. Gallagher won the election and subsequently demoted Stough to the rank of sergeant despite Stough's thirteen years of service on the force. Gallagher later assigned Stough the duties of a lieutenant, but refused to confer that title upon him or to authorize the salary and benefits commensurate with the position. Stough filed a § 1983 action against Gallagher in which he alleged that the demotion and subsequent withholding of promotion were in retaliation for his political speech in favor of James. The district court denied Gallagher's motion for summary judgment based upon qualified immunity and he appealed.

In applying the Pickering balancing test, a panel of this court recognized that political speech, which addresses public issues or candidates running for public office, "occupies the 'highest rung of the hierarchy of First Amendment values' entitling it to special protection." Id. at 1529 (quoting Connick v. Myers, 461 U.S. 138, 145, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708, 718 (1983)). It was necessary, therefore, to balance Stough's interest

10

in speaking out against Gallagher's concerns for promoting the efficiency of the public services of the Sheriff's Office. In Stough's favor the court pointed out that his speech took place during off-duty hours, on a public platform to potential voters who were seeking information with respect to Gallagher's qualifications for office and at a time before Gallagher became the Sheriff. The court also noted that Stough's campaigning never occurred on official premises or at official functions and his speech was not rude or insulting to Gallagher. In his defense, Gallagher contended that Stough's views detrimentally impacted close working relationships within the Sheriff's Office for which personal loyalty and confidence were necessary. But, he presented no evidence to support this assertion. To the contrary, the record established that after Gallagher's election, Stough assured Gallagher of his support and commitment to work harmoniously under Gallagher's command. Gallagher had no complaint with Stough's performance and agreed with evaluations which rated him highly and recommended promotion. Furthermore, according to official policy set by Gallagher, personal political loyalty to the sheriff was not a prerequisite for officers holding the rank of captain. Balancing these factors, this court concluded that a reasonable official in Gallagher's place would have known that demoting Stough violated clearly established First Amendment law. Id.

The precise nature of the time, place, manner and content of the plaintiffs' political speech in the present case is not evident from the record. For purposes of this appeal, we will presume

11

that, like Stough's, it encompassed matters of public concern entitled to First Amendment protection. The similarity between the two cases, however, begins and ends there.

It has long been clearly established, through Stough and other cases that, generally speaking, government employees may not be demoted or discharged because of their political speech or party affiliation. See Rutan v. Republican Party, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990);[7]  Bryson, 888 F.2d at 1565.  Neither Stough, nor any other case we have found dictates, however, that a plaintiff in a § 1983 lawsuit may not be transferred to a position involving no loss or pay or rank, to alleviate the concerns of supervisors named as defendants, who reasonably believe that their ability to effectively direct and discipline a subordinate plaintiff has been compromised because of the litigation.  This is particularly true in the law enforcement context, where concerns for order, loyalty, morale and harmony are at a premium.     See Hansen, 19 F.3d at 577.  Moreover, the record in this case supports the defendants' position that the lawsuit affected the efficient operation of the Department.  For example,  after the action was filed, Weekley observed Rogers and Aoun taking an overly long break, but did not reprimand them for fear of being accused of retaliatory harassment.  This is not a case in which   Pickering

_____

[7]There are exceptions to this general rule in certain compelling circumstances, where political loyalty is necessary for the effective functioning of the enterprise.  For example, a governmental entity may condition the employment of high-level officials on party affiliation when required to implement policy. See Rutan, 497 U.S. at 74, 110 S.Ct. at 2737, 111 L.Ed.2d at 66.

12

balancing leads to the inevitable conclusion that transferring the plaintiffs was unlawful.  We consequently hold that the defendants are entitled to qualified immunity from damages arising from the transfers.[8]

That the defendants should have known that the remaining conduct of which they are accused was impermissible under the First Amendment is likewise unclear under preexisting law.  To prevail on a claim for damages, the plaintiffs must demonstrate that they suffered "adverse employment action" because of their political support of DeRise, McCabe v. Sharrett, 12 F.3d 1558, 1563 (11th Cir. 1994), and that the contours of such prohibited retaliation were clearly established at the time, Lassiter v. Alabama A & M Univ., 28 F.3d 1146, 1149 (11th Cir. 1994).  "'Adverse employment action' is broadly defined and as a matter of law includes not only discharges, but also demotions, refusals to hire, refusals to promote, and reprimands."  McCabe, 12 F.3d at 1563.  The plaintiffs point to no cases, however, in which warnings of the type involved here or attempts to sway a government coworker's political views have been held actionable under § 1983.  To summarize, Weekley did nothing more than advise Aoun to avoid politics and tell Rogers that he was suspected of on-duty campaigning.  Jackson urged Shea to reevaluate his support of DeRise and counseled the members of a training class to keep a low political profile.  Robinson may have

---

[8]It is not clear from the pleadings whether the transfer claims are asserted against all of the defendants, or only Miller. To prevent any confusion, we hold that none of the defendants may be held liable for the transfers in their individual capacities.

13

embarrassed Shea on a jail tour and prevailed upon him to back Miller. Clark warned Brown to leave his name out of political discussions because he was not a politician. Edwards placed Rogers' name on a chronic absentee list, which temporarily restricted Rogers' eligibility for transfers and promotions, after Rogers missed almost fifty percent of his scheduled work days over a two-month period of time.

We voice no opinion on whether, under these facts, the plaintiffs might be able to establish a violation of their First Amendment rights. We hold only that the defendants are immune from damages because no caselaw existing at the time of these events clearly established that such conduct, under the circumstances, constituted "adverse employment action" prohibited under the First Amendment. See Lassiter, 28 F.3d at 1151 (entitlement to qualified immunity is separate and distinct from the merits of the case).[9]

Contrary to the district court's conclusion, the defendants should not have been aware that their actions were unlawful based on Stough. The alleged warnings and reprisals to which the plaintiffs were subjected do not compare in severity to the

_____

[9]We are cognizant of Rogers' contention that his political speech, rather than his chronic absences, caused him to be placed on the absentee list. Based on our review of the record, we seriously doubt his ability to carry the initial burden of showing that his speech was a "substantial factor" in the decision. See McCabe, 12 F.3d at 1565 n.5. The substantive merits of the claim do not concern us, however. It is sufficient for purposes of the qualified immunity issue to recognize that a reasonable superior officer in Edwards' position should not have felt constrained by prior caselaw from taking this action. See Lassiter, 28 F.3d at 1150 (public officials are not obligated to be creative or imaginative in drawing analogies from settled caselaw while performing their discretionary duties).

14

demotion suffered by Stough. Also, the speech which the defendants in the present case allegedly sought to suppress concerned an acting sheriff rather than a nonincumbent candidate, as in Stough. Statements critical of the commanding officer of a paramilitary group such as the office of a county sheriff, carry with them the real potential for damaging cohesion and morale. See Busby v. City of Orlando, 931 F.2d 764, 774 (11th Cir. 1991) ("In quasi-military organizations such as law enforcement agencies, comments concerning co-workers' performance of their duties and superior officers' integrity can 'directly interfere[] with the confidentiality, esprit de corps and efficient operation of the [police department].'") (alterations in the original) (citation omitted). As with the transfers, Pickering balancing does not lead to the inevitable conclusion that the defendants' actions were unlawful. They are therefore entitled to qualified immunity from damages in their individual capacities.

## III. CONCLUSION

In accordance with the foregoing analysis, we REVERSE the rejection of the defendants' motions for summary judgment based on qualified immunity. The claims against Miller in his official capacity and for injunctive relief remain pending. We therefore REMAND the case to the district court for further proceedings consistent with this opinion.

15