**C. Wayne REYNOLDS, Plaintiff,**

v.

**GLYNN COUNTY BOARD OF EDUCATION and/or Glynn County School District; Ron Dempsey, Mike Kennedy, Bill Kirby, J. Yvonne Lott, Geneva Lyde, Mackford Oliver, Deborah Parkhurst, Lisa Parmalee, Susan Raikes, and Chris Reynolds, in their individual and official capacities as members of the Glynn County Board of Education; and Linward McDowell, in his individual and official capacity as Interim Superintendent, Defendants.**

Civil Action No. CV295–112.

United States District Court,
S.D. Georgia,
Brunswick Division.

Aug. 30, 1996.

Terry Lee Readdick, Richard K. Strickland, Whelchel, Brown, Readdick & Bumgartner, Brunswick, GA, for Plaintiff.

James A. Bishop, Brunswick, GA, Phillip L. Hartley, Harben & Hartley, Gainesville, GA, for Defendants.

### ORDER

ALAIMO, District Judge.

Plaintiff, C. Wayne Reynolds ("Reynolds"), brings this action under Title VII of The Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.*, 42 U.S.C. § 1981, and 42 U.S.C. § 1983, alleging that he was not promoted to the position of Personnel Director for the Glynn County School District due to his race.

Defendants, Glynn County Board of Education ("Board"), Linward McDowell ("McDowell"), in his individual and official capacity as interim superintendent, and Ron Dempsey ("Dempsey"), Mike Kennedy ("Kennedy"), Bill Kirby ("Kirby"), J. Yvonne Lott ("Lott"), Geneva Lyde ("Lyde"), Mackford Oliver ("Oliver"), Deborah Parkhurst ("Parkhurst"), Lisa Parmalee ("Parmalee"), Susan Raikes ("Raikes"), and Chris Reynolds ("C.Reynolds"), in their individual and official capacities as members of the Board, have filed motions for summary judgment.

As discussed below, Defendants' motion will be GRANTED.

## FACTS

Reynolds claims that he is the victim of reverse race discrimination. He alleges that the Board, its members, and the interim superintendent all impermissibly considered race in filling the Personnel Director position.

Reynolds was employed as Assistant Personnel Director for the Glynn County School District for twelve years until his resignation in November, 1994. As Assistant Personnel Director, Reynolds primarily was responsible for personnel matters related to the non-certified staff, such as processing leave requests, maintaining the licenses of teacher aides, and handling worker's compensation claims.

In the fall of 1993, a search was initiated to fill the vacant Personnel Director position.[1] The Personnel Director was responsible for personnel matters concerning the certified staff, such as teacher recruitment, evaluation, and certification. While there is some disagreement whether Reynolds, in effect, assumed the role of Personnel Director during the time it was vacant, he admits that he was not responsible for teacher recruiting and certification. (Pls.' S. Material Facts ¶ 2).

Résumés for the position of Personnel Director were solicited via a posted notice describing the position and its minimum qualifications. The final job posting stated that a master's degree and three years personnel or school administration experience were required.[2] (Dfts.' Mot. for Summ. J. Ex. 94). A selection committee of ten people was formed under the direction of Cal Adamson ("Adamson"), who served as a consultant to the Board and assisted interim superintendent, McDowell. The selection committee was charged with the task of selecting two candidates for the Personnel Director position from the pool of applicants. The selection committee held three meetings to accomplish this task.

At the first meeting, each committee member was instructed by McDowell to review the thirty resumes submitted and then pick the top ten candidates. At the second meeting, each members' top ten votes were tallied to determine the ten candidates with the most votes overall. Reynolds was not among the top ten, so his resume was no longer considered after that time. The selection committee then reduced their "top ten" list to five candidates. At the third meeting, the remaining candidates were interviewed.[3] The selection committee then selected two finalists whom they recommended to McDowell.

The two finalists were Barbara Kriner, a white, and Rebecca Cooper ("Cooper"), a black. McDowell reviewed the resumes of the two finalists, but he interviewed only Cooper. On November 22, 1993, McDowell recommended to the Board that Cooper be hired to fill the Personnel Director position, and the Board unanimously approved his recommendation.

Reynolds advances several theories to support his claim of reverse race discrimination. First, Reynolds maintains that he was more qualified than Cooper for the position, but Cooper was hired instead of him because she is black. Second, Reynolds contends that a

---

1. The position was vacant from 1985 to 1994.

2. The Court is uncertain whether a teaching certificate also was required. There is some evidence that the selection committee was advised that a teaching certificate was required. Construing the evidence in the light most favorable to Reynolds, the Court assumes that only a master's degree and three years' experience were required.

3. Only four candidates were interviewed because one of the candidates withdrew.

racial preference policy existed that required hiring a black job candidate over a white candidate, if the two were equally qualified. Third, Reynolds claims that Cooper was hired in response to pressure on the Board from Clergy in Action, a group of local clergymen and officials, to hire more blacks.[4] Fourth, although none of the named Defendants was involved directly with the decision not to hire him, Reynolds claims that they engaged in disguised efforts to fill the Personnel Director position with a black candidate. Specifically, Reynolds claims that Defendants controlled the selection committee.

## DISCUSSION

### I. Summary Judgment

Summary judgment requires the movant to establish the absence of genuine issues of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); Lordmann Enterprises, Inc. v. Equicor, Inc., 32 F.3d 1529, 1532 (11th Cir.1994), cert. denied, — U.S. —, 116 S.Ct. 335, 133 L.Ed.2d 234 (1995). After the movant meets this burden, "the non-moving party must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Co., Inc., 32 F.3d 520, 524 (11th Cir.1994) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The non-moving party to a summary judgment motion need make this showing only after the moving party has satisfied its burden. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir.1991). The court should consider the pleadings, depositions and affidavits in the case before reaching its decision, Fed.R.Civ.P. 56(c), and all reasonable inferences will be made in favor of the non-movant. Griesel v. Hamlin, 963 F.2d 338, 341 (11th Cir.1992).

### II. Title VII

■ Title VII of The Civil Rights Act of 1964 prohibits discrimination in the work-place on the basis of race. 42 U.S.C. § 2000e–2(a). Title VII suits may be brought against the employer, but not against individual employees. Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir.1991). Georgia law provides that all school employees are employed by the board of education. Ga.Code. Ann. § 20–2–211 (Michie 1996). The Board, therefore, is Reynolds' employer. Accordingly, Reynolds' Title VII claim against Defendants in their individual capacities is inappropriate, and, therefore, they are entitled to summary judgment.

### A. Circumstantial Evidence of Race Discrimination

In analyzing race discrimination claims, the Court follows the three-step McDonnell Douglas/Burdine framework if the plaintiff relies on circumstantial evidence to prove racial discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); e.g. Trotter v. Board of Trustees, 91 F.3d 1449, 1454–55 (11th Cir.1996).

■ Under that framework, the plaintiff must first establish a prima facie case. A reverse discrimination prima facie case requires Reynolds to prove that (1) he belongs to a class, (2) he applied for and was qualified for the job, (3) he was rejected for the job, and (4) the job was filled by a minority group member. Wilson v. Bailey, 934 F.2d 301, 304 (11th Cir.1991). Second, if a plaintiff successfully establishes a prima facie case, then the defendant must articulate a legitimate, nondiscriminatory reason for its failure to promote the plaintiff. A defendant is then only required to produce sufficient evidence to raise a genuine issue of fact as to whether it discriminated against plaintiff. Burdine, 450 U.S. at 254, 101 S.Ct. at 1094, 67 L.Ed.2d at 216. Third, plaintiff then must prove that the proffered reason is merely a pretext for discrimination. At all times, however, Reyn-

---

4. The former superintendent of Glynn County School District met on a few occasions with Clergy in Action regarding its concerns about minorities. Specifically, the group was concerned about the low numbers of blacks em-ployed by the school district. Reverend Pettibone was a leader of the group and, on three occasions, he voiced its concerns at Board meetings.

olds retains the ultimate burden of persuasion to prove Defendants discriminated against him on the basis of his race. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407, 419 (1993) (citations omitted).

As explained below, although Reynolds successfully establishes a *prima facie* case of reverse discrimination, he is unable to rebut the legitimate, nondiscriminatory reasons offered by Defendants as mere pretexts for discrimination.

### 1. *Prima Facie Case*

■ Reynolds has established a *prima facie* case. It is undisputed that Reynolds is a member of a class, and that he applied for the Personnel Director position, but was rejected. The only issue raised by the parties is whether Reynolds was qualified for the promotion to Personnel Director. Considering the evidence in the light most favorable to Reynolds, the non-movant, the Court concludes that he was qualified for the position since he held a Masters Degree in Business Administration and had forty years of experience in personnel management.

### 2. *Board's Legitimate, Nondiscriminatory Reasons*

■ Defendants have articulated several legitimate, nondiscriminatory reasons for their decision not to promote Reynolds. First and foremost, Defendants assert that Reynolds was not among the two finalists in contention for the position. Indeed, Reynolds failed to make the first round of "cuts" made by the selection committee. There is no evidence suggesting Defendants were in any way connected with the selection committee's decision not to consider Reynolds for the Personnel Director position beyond the first round.

Second, Defendants assert that Cooper was hired because she was more qualified for the position than Reynolds. Defendants point to Cooper's eight years experience as Personnel Director with the Savannah–Chatham County School District, a much larger school district than Glynn County. (Aff. Cooper Ex. 1). In contrast, Reynolds has no experience in areas such as teacher recruit-

ment and certification. In addition, Cooper is a certified teacher, whereas Reynolds is not. Plaintiff points to his forty years of experience in personnel management, and particularly his twelve years experience as Assistant Personnel Director as evidence that he is more qualified for the position. Plaintiff concedes, however, that his personnel management experience is confined to industry and admits that he has no experience with regard to teacher evaluation or certification. (Pl.'s S. Material Facts ¶ 2).

### 3. *Pretext*

Since Defendants offer legitimate, nondiscriminatory reasons for their decision not to hire Reynolds, the burden again shifts to Reynolds to show that the proffered reasons are a mere pretext for discrimination under the *McDonnell Douglas/Burdine* framework. Reynolds advances several theories in support of his contention that Defendants engaged in reverse race discrimination.

■ Reynolds argues that a statement made by Kirby, a Board member, is sufficient to raise an inference of discrimination. The statement at issue was made at a social function on February 5, 1994. Kirby stated, "I guarantee you we won't have anymore problems with Pettibone. .... We have him cornered now. We gave him a black Personnel Director." (Reynolds Aff. ¶ 20). Reynolds contends that this statement alone is sufficient to raise a genuine issue of material fact whether race was impermissibly considered in hiring a Personnel Director, but the Court is not persuaded.

This statement was made more than two and one-half months *after* Cooper was hired. In addition, Kirby swore in his uncontroverted affidavit that he had no knowledge of Cooper's race when he voted to hire her. Even construing the evidence in the light most favorable to Reynolds, the Court has no trouble concluding that a post hoc assessment, such as this statement, is insufficient to show that Defendants' articulated reasons are mere pretexts for discrimination. The statement is too far removed in time to have any relevance to the actions of the Board at the time they voted to hire Cooper. Furthermore, the overwhelming evidence shows that the majority of the Board did not know

Cooper was black when they voted to hire her.[5]

■ Reynolds also contends that the appearance of Clergy in Action at Board meetings is sufficient to raise an inference of discrimination. Reynolds asserts that Clergy in Action pressured the Board to hire more minorities and that Cooper was hired in response to this pressure.

As previously mentioned, the majority of Board members were unaware of Cooper's race at the time of the vote to hire her. In addition, Reynolds was no longer being considered for Personnel Director by the time the Board became involved with the hiring process. The Court concludes that the appearance of a local group at Board meetings to express its concerns is insufficient to raise an inference of discrimination. Indeed, it is common for groups to appear at board of education meetings to express opinions and voice concerns. (*See* Dempsey Dep. at 30–31) (stating that various groups appeared at Board meetings, including sex education groups, athletic boosters, and band boosters). Furthermore, Reynolds offers no evidence to establish a connection between the appearance of Clergy in Action at Board meetings and the decision by the selection committee not to hire him as Personnel Director.

Reynolds has not met his burden to show that Defendants' legitimate, nondiscriminatory reasons are mere pretexts for discrimination. He has failed to connect the instances involving Kirby or Clergy in Action with the decision of the selection committee not to hire him. The conclusory allegations of an elaborate scheme to cover up reverse racial discrimination are insufficient to raise an inference of discrimination.

**B. Direct Evidence**

■ The *McDonnell Douglas/Burdine* framework is inapplicable, however, if plain-

tiff relies on direct evidence of racial discrimination. *Wilson v. City of Aliceville,* 779 F.2d 631, 634 (11th Cir.1986). Where there is direct evidence of discrimination, the employer must prove that it would have made the same decision even if it had not considered an impermissible factor. *Caban–Wheeler v. Elsea,* 904 F.2d 1549, 1554 (11th Cir. 1990).

■ Reynolds alleges that the statement made by Kirby, *supra,* is direct evidence of discrimination. Reynolds' argument fails, however, in light of the nature of Kirby's statement. "Stray remarks in the workplace, remarks by non-decisionmakers, and statements by decisionmakers unrelated to the decisional processes are not direct evidence." *Stone v. Galaxy Carpet Mills, Inc.,* 841 F.Supp. 1181, 1185 (N.D.Ga.1993) (citing *Price Waterhouse v. Hopkins,* 490 U.S. 228, 277, 109 S.Ct. 1775, 1804, 104 L.Ed.2d 268, 305 (1989) (O'Connor, J., concurring in judgment), *id.* at 251, 109 S.Ct. at 1791, 104 L.Ed.2d at 288 (plurality opinion)).[6] In addition, statements constituting direct evidence of discrimination must be made by a person involved in the challenged decision. *Trotter v. Board of Trustees,* 91 F.3d 1449, 1453–54 (11th Cir.1996). It is the action of the selection committee, not the Board, that resulted in the decision not to consider Reynolds for Personnel Director beyond the first round. Thus, Kirby's statement was unrelated to the challenged decisional process.

Given the absence of either circumstantial or direct evidence of discrimination, the Court will grant Defendants' motion for summary judgment with respect to the Title VII claim.

**III. *Section 1983***

■ Reynolds also brings this action under § 1983 based on an alleged violation of

---

5. The uncontroverted affidavits of seven of the ten Board members state that they did not know Cooper's race at the time of the vote to hire her. (*See* Kennedy Aff., Kirby Aff., Lott Aff., Lyde Aff., Oliver Aff., Parmalee Aff., Raikes Aff.). No evidence was given whether two Board members, Dempsey and C. Reynolds, knew of Cooper's race. One Board member, Parkhurst, admitted to knowing that Cooper was black at the time she voted to hire her, but denies that race was a

factor in her decision. (Parkhurst Aff. ¶ 2). Reynolds has presented no evidence to contradict these facts.

6. Some holdings of *Price Waterhouse* are impliedly overruled by statute. *See* 42 U.S.C. § 1981(b)–(c). However, those holdings are unrelated to the issue at hand.

the Equal Protection Clause of the Fourteenth Amendment. Section 1983 actions require a plaintiff to show (1) that the actions complained of were done by a person acting under color of state law, and (2) that the challenged actions deprived plaintiff of rights secured by the Constitution or federal law. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420, 428 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Duke v. Massey*, 87 F.3d 1226, 1231 (11th Cir.1996). In addition, Reynolds must prove that Defendants engaged in purposeful discrimination. *Cross v. Alabama*, 49 F.3d 1490, 1507 (11th Cir.1995). The *McDonnell Douglas/Burdine* framework also is used to determine whether Defendants engaged in purposeful discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 n. 1, 113 S.Ct. 2742, 2747 n. 1, 125 L.Ed.2d 407, 415 n. 1 (1993); *Cross*, 49 F.3d at 1507–08 (citing *Whiting v. Jackson State Univ.*, 616 F.2d 116, 121 (5th Cir.1980)).[7]

It is undisputed that Defendants are persons[8] who acted under color of state law. Since Defendants are sued as an entity and in their individual capacities, separate analyses are required to determine whether Reynolds can maintain a successful § 1983 action against them.[9]

## A. The Board

Section 1983 liability cannot be imposed upon governmental entities under a theory of respondeat superior. *Monell*, 436 U.S. at 691, 694, 98 S.Ct. at 2037, 56 L.Ed.2d at 638. Instead, a government entity is liable under § 1983 only where plaintiff's injury results from the application of a policy or custom. *Id.* at 690–91, 694, 98 S.Ct. at 2035–36, 56 L.Ed.2d at 638. Policies are not limited to formal guidelines or practices that have

been reduced to writing. A widespread practice may be "so permanent and well settled as to constitute a 'custom.'" *St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107, 120 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–69, 90 S.Ct. 1598, 1613–15, 26 L.Ed.2d 142 (1970)).

The policies of either the entity itself or its official policy makers can give rise to liability if their application results in a deprivation of a plaintiff's constitutional rights. The Court must look to state law to identify who acts as an official policy maker with respect to hiring decisions in the Glynn County School District. *Praprotnik*, 485 U.S. at 124, 108 S.Ct. at 924, 99 L.Ed.2d at 118. Georgia law requires that all school personnel be employed only upon recommendation of the superintendent and subsequent approval by the school board. Ga.Code Ann. § 20–2–211 (Michie 1996). When the Board approves a hiring recommendation, it acts as the official policy maker for the school district. Accordingly, it is the policies and customs of the Board that are relevant.

Reynolds contends that the Board adhered to a policy that required a black job candidate to be selected over a white job candidate where both candidates were equally qualified. (Dfts.' Mot. for Summ. J. ¶ 29). Reynolds points to numerous facts from which he argues that the existence of a racial preference policy can be inferred.

Reynolds claims that Dempsey, the Board's President, stated that it was "board policy" to hire the black applicant if two applicants were equally qualified. However, an examination of Dempsey's deposition in full reveals that Dempsey clearly stated that only he himself held that view and, further, that he was unaware of other board mem-

---

7. The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

8. Municipalities and other bodies of local government are "persons" within the meaning of § 1983. *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611, 635 (1978).

9. The Court notes that Defendants also are sued in their official capacities. However, suits brought under § 1983 against individuals in their official capacities are the equivalent of bringing suit against the entity. *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir.1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114, 121 (1985) (citations omitted)).

bers' views on the subject. (Dempsey Dep. at 26–27).

■ Reynolds also contends that a racial preference policy can be inferred from the fact that over a period of several months in the latter half of 1993, four of five administrative positions were filled with black applicants. To establish a custom, "it is generally necessary to show a persistent and widespread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality. Normally random acts or isolated incidents are insufficient to establish a custom or policy." *Church v. City of Huntsville,* 30 F.3d 1332, 1345 (11th Cir.1994) (citing *Depew v. City of St. Marys,* 787 F.2d 1496, 1499 (11th Cir.1986)).

Although the Court believes it is unlikely that a jury would find that the actions of the Board rise to the level of a "persistent and widespread practice," Reynolds has produced sufficient evidence to raise a genuine issue of material fact whether a racial preference policy existed.

However, it is not enough merely to show the existence of a policy, but also that its application resulted in a deprivation of Reynolds' constitutional rights. Uncontroverted evidence shows that the Board members were unaware of the existence of the alleged racial preference policy.[10] In addition, the majority of Board members did not know Cooper's race at the time they voted to hire her. Application of a racial preference policy necessarily requires knowledge of a job candidate's race and, therefore, application of a racial preference policy by the Board was impossible since a majority of its members did not know that Cooper was black. Reynolds characterizes the Board members' lack of knowledge of Cooper's race as an ineffective "I did not know defense." On the contrary, the Court is persuaded that the Board members' lack of knowledge of Cooper's race precludes a reasonable juror from finding that the Board applied a racial preference policy.

Therefore, Defendants' motion for summary judgment with respect to the Board as an entity and as individuals sued in their official capacities will be granted.

## B. Board Members in their Individual Capacities

### 1. *Heightened Pleading*

■ The Eleventh Circuit has a heightened pleading requirement for § 1983 claims filed against individuals.[11] *Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1485 (11th Cir.1992) (stating "We also stress that this heightened Rule 8 requirement—as the law of the circuit—must be applied by the district courts ....."), *cert. denied sub nom. Deutcsh v. Oladeinde,* 507 U.S. 987, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993). Plaintiffs must include factual detail sufficient to allow the Court to determine if the allegedly violated right was clearly established. *Id.* at 1485.

■ The Court finds that Reynolds has failed to satisfy the heightened pleading requirement with respect to Defendants, Kennedy, Lott, Lyde, Oliver, Parkhurst, Parmalee, Raikes, and C. Reynolds. No factual details whatsoever are alleged concerning the actions of these defendants. Since Reynolds has done no more than make general accusations lacking any evidentiary support, Defendants' motion for summary judgment with respect to the above named Defendants will be granted.

### 2. *Qualified Immunity*

Although Reynolds satisfies the heightened pleading requirement with respect to remaining Defendants, Dempsey, Kirby, and McDowell, he still must clear the qualified immunity hurdle.

---

10. The Court has reviewed the depositions of the Board members. No Board member acknowledges the existence of a racial preference policy.

11. The Court is aware that a heightened pleading requirement has been invalidated in suits brought against a municipality. *Leatherman v.*

*Tarrant County Etc.,* 507 U.S. 163, 164, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517, 522 (1993). However, the Court is unaware of any successful actions challenging the heightened pleading requirement with respect to § 1983 claims brought against individuals.

■ The United States Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982); *see also Spivey v. Elliott*, 29 F.3d 1522, 1524 (11th Cir.1994). "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 818–19, 102 S.Ct. at 2738, 73 L.Ed.2d at 411. The "objective reasonableness" standard is used to determine whether the law was clearly established. *Stough v. Gallagher*, 967 F.2d 1523, 1525 (11th Cir.1992).

In the Eleventh Circuit, the "objective reasonableness" standard is applied through a two-part analysis:

(1) The defendant public official must first prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."

(2) Once the defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part. The burden is met by proof demonstrating that the defendant public official's actions "violated clearly established constitutional laws."

*Id.* at 1526 (quoting *Rich v. Dollar*, 841 F.2d 1558, 1563–64 (11th Cir.1988)). "A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277, 287 (1991); *see Burrell v. Board of Trustees*, 970 F.2d 785, 792 (11th Cir.1992) (stating that "Without a constitutional violation, there can be no violation of a clearly established right."), *cert. denied,* 507 U.S. 1018, 113 S.Ct. 1814, 123 L.Ed.2d 445 (1993).

■ Reynolds has failed to establish the violation of a constitutional right. First, there is no genuine issue of material fact that the selection committee, and not the Board, made the decision not to hire Reynolds for the Personnel Director position. Reynolds has presented no evidence connecting these defendants with the selection committee's decision to cut him in the first round. Second, Reynolds fails to explain how his equal protection rights were denied given that he was not among the two finalists considered for the Personnel Director position. There is no genuine issue of material fact that Reynolds was eliminated from consideration for the position after the "top ten" round and, therefore, he was not among the candidates considered by these defendants. Reynolds must show a deprivation of his *own* equal protection rights to overcome Defendants' immunity to suit, but he has failed to do so.

Accordingly, the Court will grant Defendants' Motion for Summary Judgment with respect to Dempsey, Kirby, and McDowell based on qualified immunity.

## IV. *Section 1981*

### A. The Board

■ A § 1981 claim cannot be maintained against a government entity where a § 1983 claim is also brought. The United States Supreme Court, in *Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701, 735, 109 S.Ct. 2702, 2722–23, 105 L.Ed.2d 598, 627 (1989), a plurality opinion joined by four justices, held that § 1983 provides the exclusive remedy for rights guaranteed by § 1981 when the claim challenges state action. Presently, though, there is a split in the courts whether the 1991 Amendments to the Civil Rights Act ("1991 Amendments") overruled *Jett*. The relevant amendment, relied upon by federal courts, provides that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c).

Some courts have relied on the language of § 1981(c) and hold that the 1991 Amend-

ments overrule *Jett,* and, therefore, conclude that § 1983 is not the exclusive remedy for a § 1981 claim brought against a government entity. *E.g., Morris v. Kansas Dept. of Revenue,* 849 F.Supp. 1421, 1426 (D.Kan.1994). The Court, however, is hesitant to assume the Supreme Court decision is overruled in the absence of any clear authority. *See Johnson v. City of Fort Lauderdale,* 903 F.Supp. 1520, 1522 (S.D.Fla.1995) (citing *Philippeaux v. North Cent. Bronx Hosp.,* 871 F.Supp. 640 (S.D.N.Y.1994)) (stating that "[N]one of these cases contains a detailed or well reasoned inquiry into whether the amendments to § 1981 overruled *Jett.*").

Courts in the Eleventh Circuit have continued to hold that § 1983 remains the exclusive remedy when both § § 1981 and 1983 claims are brought against a state actor. *Hicks v. Lewis,* No. 95–218–CIV–T–1 7A, 1996 WL 172994 at *2 (M.D.Fla.1996), *Johnson,* 903 F.Supp. at 1523. In a thorough analysis of the legislative history of the 1991 Amendments and the Court's reasoning in *Jett,* the *Johnson* court concluded that the 1991 Amendments did not overrule *Jett. Johnson,* 903 F.Supp. at 1522–23. The Court agrees. Thus, a violation of the rights protected under § 1981 must be brought as a cause of action under § 1983.

Therefore, Defendants' motion for summary judgment on the § 1981 claim against the Board will be granted.

### B. The Board Members in their Individual Capacities

Section 1981 prohibits racial discrimination in the making and enforcement of contracts, including employment contracts.[12] *Runyon v. McCrary,* 427 U.S. 160, 168–69, 96 S.Ct. 2586, 2593, 49 L.Ed.2d 415, 423 (1976). To recover under § 1981, Plaintiff must show that Defendants engaged in purposeful discrimination. *General Bldg. Contractors v. Pennsylvania,* 458 U.S. 375, 390, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835, 849 (1982); *Shealy v. City of Albany,* 89 F.3d 804, 806 (11th Cir.1996). The *McDonnell Douglas/Burdine* framework is also used to determine whether Defendants engaged in

purposeful discrimination. *See Shealy,* 89 F.3d at 805.

The analysis of Reynolds' Title VII claim under the *McDonnell Douglas/Burdine* framework, *supra,* led to the conclusion that Defendants did not engage in purposeful discrimination. Since the same analysis is followed for both Title VII and § 1981, it follows that Defendants also did not engage in purposeful discrimination regarding the claim brought under § 1981 since both claims are based on the same set of facts. Therefore, Defendants' motion for summary judgment on the § 1981 claim against the Defendants in their individual capacities will be granted.

### CONCLUSION

The Court has carefully considered all of Reynolds' claims and the briefs in support of all parties' positions. For the reasons stated above, Defendants' Motion for Summary Judgment is **GRANTED.**

---

12. Promotion to Personnel Director would involve entering into a new employment contract and, therefore, Reynolds can bring his claim under § 1981.